UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

                Plaintiff,                Case No. 14-cv-14939

v.                                         Honorable Thomas L. Ludington

JENNIFER L. BENTLEY and
BANK OF NEW YORK MELLON
CORPORATION,

                Defendants.

_____/

**OPINION AND ORDER DENYING IN PART EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, DIRECTING SERVICE, AND SETTING FILING DEADLINES AND HEARING DATE**

    Plaintiff Metropolitan Life Insurance Company filed a complaint initiating this matter on December 30, 2014. ECF No. 1. MetLife contemporaneously filed a motion for a temporary restraining order ("TRO") and preliminary injunction. ECF No. 2. MetLife alleges in both documents that it erroneously overpaid monies to Defendant Jennifer L. Bentley as beneficiary of a decedent's life insurance benefits. It seeks both a TRO to "maintain the *status quo*" and a hearing date to consider its request for a preliminary injunction. ECF No. 2 at ¶ 17. The motion for a TRO will be denied but a hearing will be scheduled for consideration of Plaintiff's request for a preliminary injunction.

**I.**

    On July 31, 2014, Richard H. Gillette, a former employee of General Motors Corporation, passed away. ECF No. 2 at ¶¶ 3 & 5. As an employee of General Motors, Gillette participated in the General Motors Life and Disability Benefits Program ("Plan"). *Id*. at ¶¶ 1 & 3.

Upon his death, Gillette's life insurance benefits were payable to Bentley, as the last designated beneficiary of Gillette. *Id.* at ¶ 4. Benefits in the amount of $20,613.26 were payable to Bentley at the time of Gillette's death. ECF No. 1 at ¶ 8.

"On August 4, 2014, Defendant Bentley signed an Assignment of Proceeds of Life Insurance . . . assigning $9,893.47 of the [life insurance benefits] to the Swartz Funeral Home, Inc. . . ., in Flint, Michigan." ECF No. 2 at ¶ 6. MetLife paid the required amount to Swartz Funeral Home under the Assignment of Proceeds agreement. *Id.* at ¶ 7. An internal computation error was made by MetLife, however, and the amount paid by MetLife to Swartz was not deducted from the disbursement of monies to Bentley. *Id.* at ¶ 8. MetLife deposited the entire $20,613.26 into Bentley's total control account ("TCA") "established by MetLife with BNY Mellon[.]" *Id.*

When MetLife discovered this error on October 6, 2014 it "contacted Defendant Bentley by telephone to explain . . . and request that the [o]verpayment of $9,893.47 be returned[.]" *Id.* at ¶ 9. On October 7, 2014 MetLife also sent a letter to Bentley reminding her that she had allegedly agreed to repay any overpayment from MetLife and providing her with different options for repayment. *Id.* at ¶ 10. According to Plaintiff, "[t]o date, Defendant Bentley has failed and refused to repay the [o]verpayment of $9,893.47 to MetLife." *Id.* at ¶ 11. MetLife has initiated this action to recover that amount plus what it claims are reasonable attorney fees.

**II.**

Rule 65 provides that a "court may issue a [TRO] without written or oral notice to the adverse party or its attorney" if two requirements are satisfied: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's

attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Four factors govern whether the Court will issue a TRO (the same four factors governing whether to issue a preliminary injunction): (1) whether the plaintiff has demonstrated a substantial likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would harm others; and (4) whether the public interest is served by granting injunctive relief. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (citation omitted); *see also Ne. Ohio Coal. for Homeless and Serv. Emps. Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).

### III.

Plaintiff, in its motion for a TRO, does not engage in any analysis of the four factors governing the propriety of granting temporary injunctive relief. Rather, Plaintiff explains, with repetitious citation that the provision authorizing the relief it seeks is ERISA § 502(a)(3) and is equitable in nature. This provision may indeed, as the quoted authority states, be equitable in nature. But this does not relieve Plaintiff from demonstrating its entitlement to this specific type of equitable relief. The closest Plaintiff comes to an analysis of the factors favoring a TRO is in the text of its motion. Therein it recites multiple times that it may not be able to recover the overpayment amount if a TRO is not entered. Plaintiff does not, however, explain why this is so. Particularly because "harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). Even if the purpose of

emphasizing authority that holds § 502(a)(3) of ERISA to be equitable in nature is to demonstrate that money damages are not sufficient in this case, it does not excuse Plaintiff's lack of attention to any analysis of the TRO factors.

Plaintiff also omits consideration of the second requirement under Rule 65 for the issuance of a TRO. Nothing in Plaintiff's complaint or motion explains why no effort to give notice to Defendant Bentley should be required. Plaintiff states that "there is a strong likelihood that Defendant Bentley will withdraw funds from the Bentley TCA account making it difficult or impossible for MetLife to recover the Overpayment and be reimbursed for its attorney's fees[.]" ECF No. 2 at 5. But once again, this conclusory claim, without more, will not support the issuance of a TRO.

Furthermore, even if assuming, without deciding, that § 502(a)(3) of ERISA entitles a plan fiduciary to immediate equitable relief, Plaintiff does not provide the requisite proofs to demonstrate that § 502(a)(3) applies to this specific situation. Section 502(a)(3) reads:

> A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). Plaintiff does not identify anything in its initial filings demonstrating that a "term of the plan" requires enforcement to remedy the overpayment to Bentley. Plaintiff attaches to its complaint a letter it sent Bentley which states: "MetLife has a responsibility and the right to recover overpaid benefit amounts. . . . As set forth in the Claimant's Statement you signed and submitted to MetLife, you agreed to repay MetLife in the event of an overpayment." ECF No. 1 at Ex. C. Plaintiff does not explain to the Court what, presumably the plan, gives it "the right to recover overpaid benefit amounts[.]" Likewise, Plaintiff does not include the "Claimant's Statement" showing that Bentley acknowledged a right of repayment. The omission

of these documents is doubly problematic because the authority on which Plaintiff relies requires proof of an "equitable lien by agreement" for the action being brought under § 502(a)(3) to be characterized as equitable. *See Sereboff v. Mid Atl. Med. Srvs., Inc.*, 547 U.S. 356, 363-365 (2006). Without these documents, relief cannot be given.

### IV.

MetLife also moves in its motion for further relief beyond a TRO. Specifically, it asks that the Court schedule a hearing on its request for a Preliminary Injunction and that "this Court enter Judgment against Defendant Bentley[.]" ECF No. 2. The request for judgment is premature as Defendant has not had an opportunity to respond. The request for a preliminary injunction hearing, however, will be granted.

### V.

Accordingly, it is **ORDERED** that Plaintiff MetLife's Motion for Temporary Restraining Order, ECF No. 2, is **GRANTED** in part and **DENIED** in part. A temporary restraining order will not be issued.

It is further **ORDERED** that Plaintiff MetLife is **DIRECTED** to serve a copy of this Opinion and Order on Defendants BNY Mellon and Bentley, and then file proof of service on the Court's docket.

It is further **ORDERED** that Plaintiff MetLife is **DIRECTED** to file a motion for a preliminary injunction no later than **February 6, 2015**.

It is further **ORDERED** that Defendants BNY Mellon and Bentley's responses to that motion are due on or before **February 27, 2015**.

It is further **ORDERED** that any reply brief, should Plaintiff MetLife choose to file one, is due no later than **March 6, 2015**.

It is further **ORDERED** that a hearing on Plaintiff MetLife's motion for a preliminary injunction (to be filed by February 6, 2015), is set for **April 8, 2015 at 2:00 p.m.**

Dated: January 13, 2015                         s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 13, 2015.

s/Tracy A. Jacobs
TRACY A. JACOBS